Filed 7/14/23  In re D.W. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.W., a Person Coming Under the Juvenile Court Law. | B325908 (Los Angeles County Super. Ct. No. 22CCJP01410A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.M., Defendant and Appellant. | |

THE COURT:

C.M. (Mother) appeals a juvenile court order terminating parental rights to her daughter D.W.  (Welf. & Inst. Code, § 366.26.)[1]  Appointed counsel filed a brief raising no arguable issues.  (*In re Phoenix H.* (2009) 47

---

[1] Undesignated statutory references in this opinion are to the Welfare and Institutions Code.

Cal.4th 835, 844–846.)  Mother's supplemental brief does not cite the record or legal authority, or show any arguable issue.  Accordingly, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

Mother has a history of dependency court involvement.  In 2021, the court terminated parental rights to her daughter J.W.  The sustained petition arose from Mother's substance abuse, untreated mental condition, and her abandonment of three-month-old J.W., first in a store and then in the middle of a street.  Mother also lost custody of a son born in 2014.

Before D.W.'s birth, in April 2022, police brought Mother to the hospital after she had an altercation and removed her clothing at a nail salon.  At the hospital, she removed her gown and insisted on being naked.  When Mother gave birth to D.W., she tested positive for marijuana, verbally abused nurses, threw a COVID-19 test swab, resisted having blood drawn, refused to wear a pad and was bleeding on the bed, floor, and herself, and defied hospital policy that newborns sleep in a bassinette.  Mother admitted using marijuana several times daily while pregnant.

A social worker (CSW) from Los Angeles County Department of Children and Family Services (DCFS) learned that Mother is bipolar, does not take medication for her condition, and is violent and verbally abusive.  She sent threatening messages to D.W.'s father and said she planned to sell D.W. for $40,000.  The paternal grandmother reported that Mother is violent.  D.W.'s father said Mother "had breakdowns constantly," destroyed property, was violent, and often went nude in public.

The court issued an order to remove D.W. from Mother, who refused to relinquish the baby.  Law enforcement came to the hospital to assist.  Mother appeared to have severe mental health issues.  D.W. was placed with her sister J.W., who lives with adoptive parents; the family wishes to adopt D.W. as well.  At the end of April 2022, Mother had a manic episode and was assessed for hospitalization.

In May 2022, Mother went to Hawaii.  She told CSW she was on vacation but was in a psychiatric ward in Honolulu.  She refused to take medication, saying " 'I don't need it.' "  In June 2022, Mother was hospitalized

in Georgia for a dog bite, then removed from a flight to Los Angeles after causing a ruckus.

Mother did not visit D.W. from April 30 to May 30, 2022, while involuntarily hospitalized. When she visited D.W., they had little interaction and there did not appear to be a bond between them. Mother missed most drug tests from April to mid-July.

In July 2022, the court sustained an amended petition, finding Mother has mental health and substance abuse issues; failed to reunify with J.W.; endangered D.W. by sleeping with the baby in her hospital bed; and engaged in domestic violence with D.W.'s father. (§ 300, subds. (b), (j).) At disposition in August 2022, D.W. was declared a dependent of the court and removed from both parents. The court found that the Indian Child Welfare Act (ICWA) notices and investigation are complete, and there is no reason to believe ICWA applies. It bypassed reunification services and set a permanent plan hearing. (§ 361.5, subd. (b)(10)–(11).)

In October 2022, Mother enrolled in a program that provides therapy, substance abuse treatment, and parenting classes. A counselor told CSW in November 2022 that Mother has mental health problems and was trying to "fire" program staff members. She was barred from group sessions for causing disruptions.

In December 2022, Mother petitioned for a modification, seeking custody of D.W. or reunification services. She claimed mental stability and cited her recent participation in services. The court summarily denied the petition because there was insufficient evidence of changed circumstances, Mother has unresolved mental health issues, and modification is not in D.W.'s best interest.

At the permanent plan hearing on December 8, 2022, Mother objected to termination of parental rights, citing the parent-child bond exception. She testified that she visits D.W. for four hours per week, plays with the baby and tends to all her needs. D.W. is happy to see Mother and cries when she leaves. D.W.'s father was in favor of adoption.

The court found D.W. adoptable, identified adoption as the permanent plan, found that no exceptions to the legislative preference for adoption apply, and terminated parental rights. (§ 366.26.) Mother appealed.

## DISCUSSION

Mother's supplemental brief does not cite the record or relevant case law. Her factual statements conflict with the record. For example, she writes that she vacationed in Hawaii. However, the record shows a social worker in Honolulu told DCFS that Mother was in a psychiatric ward; CSW spoke to Mother, who said she would be released " 'very soon.' " Mother later said she went to Hawaii because " 'elite people in LA were trying to kill me.' " When she arrived, people spoke in " 'demonic tongue' " and police took her from the airport to the hospital.

Mother's discussion of alleged mishandling of J.W.'s case is not germane to this appeal, which only involves D.W. The record shows she has a minimal bond with D.W., who was removed from Mother at birth and only knows the prospective adoptive parents. Mother made no progress in addressing her issues and refuses to use psychotropic medication despite multiple involuntary hospitalizations.

Mother contends that DCFS and the court proceeded with the case without giving proper notice to Indian tribes. The court ordered an ICWA inquiry after both parents reported Indian ancestry. None of the tribes mentioned by the parents indicated that D.W. is an Indian child, in response to notices sent by DCFS.

During Mother's prior case, the court found in 2020 that ICWA did not apply to D.W.'s sibling, J.W. At the time, Mother claimed Cherokee ancestry through her father, who told DCFS he believed he had Apache heritage. Notices were sent. No tribe indicated that the parents or child are enrolled or eligible for enrollment. In the current case, the court noted the prior finding in J.W.'s case that ICWA did not apply, following a full investigation. The court stated that DCFS "already noticed all of the Apache tribes."

DCFS sent notices to eight Apache tribes, without a positive response, and spoke repeatedly to family members about Indian ancestry. Mother was "adamant that her maternal great-grandfather is a registered member of the Yavapai-Apache Nation." The tribe responded that Mother's relatives "are not members of the Yavapai-Apache Nation." Mother claimed to have an enrollment number but refused to provide it to DCFS.

4

Mother later claimed her great grandfather was a member of the Chiricahua Apache Nation, but the tribe denied membership. A sub-group Mother mentioned is not federally recognized. (*In re Wanomi P.* (1989) 216 Cal.App.3d 156, 166–167 [ICWA only applies to federally recognized tribes].) Mother next claimed her relative was "affiliated with the Colville Tribe." DCFS sent notice and the Colville Tribe denied any affiliation.

The juvenile court recited DCFS's many efforts to establish tribal membership. It found that Mother's shifting accounts of Indian ancestry are "a delay tactic." The record shows no reason to believe D.W. is an Indian child, i.e., a member of a tribe or eligible for membership and the biological child of a tribe member. (§§ 224, subd. (c), 224.1, subd. (b).)

Mother has not provided any reasoned legal argument or authority showing that the juvenile court's ruling constitutes reversible error. We thus deem the appeal abandoned and dismiss it. (See *In re Sade C.* (1996) 13 Cal.4th 952, 994.)

### DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED.

_____

LUI, P. J.                    CHAVEZ, J.                    HOFFSTADT, J.